Appellant Colin Cox Co-Counsel I'm here with my co-counsel from Lone Star Legal Aid as well as my client, Mr. John Beard, the chairman and founder of the Port Arthur Community Action Network. I want to make three important points this morning. Point number one is that this proposed Port Arthur liquefied natural gas plant, Port Arthur LNG, is a major source of air pollution as defined under the Federal Clean Air Act. And that means its pollution limits must meet the best available control technology standard, or BACT, as that standard is defined in the Federal Clean Air Act and in EPA regulations. Point number two, in the BACT analysis, you look at the pollution limits in recent permits. And the most stringent limit that isn't eliminated for technical or economic reasons is BACT. TCEQ admits this much in its order. And point number three, almost two years before granting a permit to Port Arthur LNG, the TCEQ granted the same type of major source permit to a similar plant, Rio Grande LNG. The Rio Grande permit authorizes the same process, the liquefaction of natural gas, using the same turbines, GE Frame 7EA, and the same type of pollution control technology as Port Arthur LNG. But it has much more stringent pollution limits. With these three points in mind, the case boils down to this. TCEQ argues that they're not required to consider the lower pollution limits at Rio Grande LNG in their BACT analysis for Port Arthur LNG. And the only reason they give is that the Rio Grande plant is permitted but not yet up and running. To use TCEQ's language, Rio Grande LNG has not proven to be operational. The problem with TCEQ's order is that a BACT determination for federal major sources is required to consider, to at the very least consider the permit limits for recently issued similar plants for the same type of plant. It's true that the commission has discretion in the BACT process, but that discretion comes in making a case-by-case determination based on technical and economic factors, whether a given control is reasonable for a particular plant. Here, the commission failed to consider, that is they chose not to consider, relevant lower permit limits in the record. We, the Port Arthur Community Action Network, agree with the two administrative law judges who heard this case and with the EPA that TCEQ was required to at least consider the lower limits at Rio Grande LNG. TCEQ's failure to consider these lower limits is a legal error, and their order based on this error is invalid, arbitrary, and unreasonable. We're asking this court to reverse that order and remand Port Arthur LNG's permit back to the agency for a legally sufficient BACT analysis. The TCEQ order was based on clear legal error because the commission relied on the wrong definition of BACT. Instead of applying the federal definition for major sources, TCEQ relied on the minor source definition from Texas regulations. The commission used this minor source definition to rule out Rio Grande LNG from the comparison because it's not yet operational. The legal question is, is TCEQ required to consider recently issued LNG permits in its BACT analysis for Port Arthur LNG? The plain language of the regulatory definition of BACT and the procedures, the EPA and TCEQ procedures in the record that the parties claimed to have followed, and even the applicant's witnesses at the hearing, all answered yes to this question. But TCEQ neglected this basic requirement. This matters because if TCEQ's order stands, then Port Arthur LNG will be allowed to release more of two key pollutants, nitrogen oxides, which form smog, and carbon monoxide, which interrupts the body's ability to carry oxygen to the brain, every hour of every day for the life of the facility, compared to what a similar facility just down the coast on the Rio Grande is allowed to emit. That's an additional 1,200 tons of air pollution every year, and this is in a community that's already so overburdened by pollution that EPA has identified West Port Arthur as an environmental justice showcase community, which just means what the people who live there already know. That means that in America, black and brown people breathe disproportionately more pollution than the general population. And so TCEQ has given it this designation to try to funnel some resources there in an attempt to alleviate this problem. I invite any questions from the court, but if not, I'll talk a little bit about best available control technology and how TCEQ failed to follow the federal definition in their procedures here. So under the Federal Clean Air Act, when a company wants to build a major source of air pollution like Port Arthur LNG, they have to commit to using pollution controls that are at least as stringent as what other plants are using. And that's right there in the definition, I mean in the word, right, best available control technology. They have to do the best they can, taking technical and economic consideration, to reduce their pollution. It's a technology forcing statute that ensures kind of forward progress in reducing pollution, industrial pollution, over time. And the first thing that you look at when you're deciding what the pollution limit should be for a new source is the pollution limits at similar sources. What are other plants doing? Can we match it? If we can't match it, why? All the parties have agreed that this is the structure of best available control technology. And according to the guidance documents and the statute that the parties cite, the most stringent limit that isn't eliminated for technical or economic reasons is backed. The way a new source can justify a less stringent, you know, more polluting limit compared to other sources, if they can show that meeting that lower limit is technically infeasible, economically unreasonable, or has otherwise some other collateral impacts. But, and this is very important, that justification has to be in the record. It has to be well documented. It has to be carefully reviewed by the TCEQ. And the burden of proof is on the applicant, Port Arthur L&G, to show that they can't meet the limit that other similar plants, that their competitors, are meeting. I'll talk a little bit specifically about Port Arthur L&G's back determination. So after the evidentiary hearing at the State Office of Administrative Hearings, two administrative law judges determined that Port Arthur L&G should meet the limits of five parts per million of nitrogen oxides and 15 parts per million of carbon monoxide. And they based this on similar recently issued permits, including for Rio Grande. Now, as I've said, Rio Grande is the same type of facility as Port Arthur, the same liquefaction process, the same turbines, the same pollution controls. It just has significantly lower limits than what Port Arthur L&G is proposing. TCEQ found those much more stringent limits at Rio Grande to be achievable, to be technically feasible, and to be economically reasonable. TCEQ found those limits to be backed for Rio Grande. And they did this in 2020, in a permit they issued, almost two years before TCEQ issued the order here and granted the permit to Port Arthur L&G. Despite this evidence, TCEQ now approves a permit for Port Arthur L&G that allows them to release 80 percent more nitrogen oxide compared to Rio Grande and 66 percent more carbon monoxide compared to Rio Grande. And they offer no evidence to support this. They offer no evidence to demonstrate any kind of compelling technical or economic difference between what Rio Grande is doing and what Port Arthur L&G proposes to do. They claim, wrongly, that they don't have to consider the limits in Rio Grande at all, because Rio Grande is not yet operational, and its limits haven't been demonstrated to be achievable. They get here by first applying the wrong definition of backed, and second, arbitrarily ignoring the TCEQ and EPA rules and procedures that they claim to have followed in this case. So my first point, TCEQ argues that the Texas minor source backed definition applies and that this definition precludes consideration of the pollution limits at Rio Grande. I think the key difference in the language between the federal major source definition and the Texas minor source definition is that the Texas minor source definition requires a plant to be proven to be operational before those limits can be considered. That's not in the major source definition. Here there's no dispute that Port Arthur L&G is a major source, but there is a dispute about which definitions apply. The parties admit that the federal definition, major source definition, applies. TCEQ and Port Arthur L&G also claim that the minor source definition applies. But this claim is undermined by statements Texas has made. I just want to read a brief passage out of the Texas Register that was published when Texas readopted the federal definition in 2010. I don't think this was in my brief. And I quote, In the new source review permitting process, the first determination is whether federal requirements are triggered. If so, then the backed requirements of 40 CFR 5221B12, which is the federal definition, are applied. The commission's backed process is then applied for any other air contaminants and any other facilities not subject to federal permitting requirements. This is at 35 Texas Register 5344 and 5347. It's clear from this statement that the federal definition applies to major sources, and the minor source definition is applied for sources that are not subject to the federal review. And the case law shows this to be true. So this court and state courts have repeatedly applied the federal definition and only the federal definition to major sources like Port Arthur L&G. This court did that in United States v. Luminance in 2018 and Clean Coalition v. TXE Power in 2008. Texas state courts have also applied the major definition to major sources like in Blue Skies Alliance v. the TCEQ in 2009. Texas courts have also applied the minor source definition to minor sources in Texas Commission on Environmental Quality v. Friends of Dry Como Creek. No court has applied the minor source definition to a major source like TCEQ asks the court to do today. TCEQ's application of the minor source definition to this major source project is a clear violation of law, and TCEQ cannot claim that substantial evidence supports their decision when it made a clear error of law in reaching that decision. My second main point is that TCEQ ignores its own procedures, the procedures it claims to have followed in this case, in dismissing Rio Grande permit's more stringent limits. As I stated earlier in the TCEQ and EPA procedure that the parties claim to have followed, you look at recent permit limits. TCEQ states that their permit program was approved by EPA on the condition that they look at recent permit limits to determine back limits. And the existence of a permit requiring a specific limit is sufficient evidence to assume the achievability of that limit. And no party disputes that Rio Grande LNG was permitted with significantly lower pollution limits for nitrogen oxides and carbon monoxide well before TCEQ issued Port Arthur LNG's permit. These procedures focus on recently permitted sources. They don't focus on operational data or whether a thing is demonstrated in practice. In fact, they explicitly have two tracks for looking at back limits in recent permits. If it's demonstrated in practice, they look at it one way. If it's undemonstrated, they look at it a different way. But they do look at it. They are required to look at it, to consider it. They are required to consider its technical feasibility and its economic reasonableness as it applies to Port Arthur LNG. And so the TCEQ's departure from its guidance from the federal definition is arbitrary. And the clearest evidence, I think, of that arbitrariness is in Port Arthur LNG's application and in its testimony at the hearing. Port Arthur LNG and TCEQ in their application and review focused on permitted limits, not on operational data. And they even relied on other portions of the Rio Grande permit,  They even relied on portions of that same permit when it suited them. You know, for just a couple of examples, when discussing their back limits in their application, Port Arthur LNG says that they're, quote, consistent with the final permit action, end quote, at another facility, Cameron LNG, or will achieve rates lower than those, quote, approved as backed, end quote, at Sabine Pass LNG and Chenier LNG. Port Arthur LNG even admits that expected near-term deployment of a technology or a pollution limit is evidence that it needs to be considered in the backed analysis. That's at record 1069. So they admit that they can and must consider things that aren't demonstrated in practice, that haven't been proven yet to be operational. They have to at least consider these things. And while TCEQ and Port Arthur LNG now claim that they can't look at Rio Grande permit, they did, in fact, in their permit cite to an earlier version of Rio Grande's permit to justify their proposed backed limit. And at the hearing, they even testified extensively about Rio Grande LNG's 2020 permit, the permit they're now ignoring, as it related to a different control technology that's not a topic of today's appeal. So they relied on Rio Grande LNG's permit when it suited them and dismissed it when it didn't, based on the application of an incorrect definition. This is the meaning of arbitrary. Their use or, you know, or dismissal of the Rio Grande limits was not based on any reason or principle they can point to. It was based on arbitrary decision. So TCEQ, you know, just to sum it up, TCEQ committed legal error when it issued this permit, when it issued its order granting a permit to Port Arthur LNG despite its failure to complete a backed analysis by analyzing all the applicable sources. TCEQ's actions were arbitrary and unreasonable. We respectfully request that the Court reverse TCEQ's order and remand Port Arthur LNG's permit to TCEQ for a legally sufficient backed analysis. Thank you, Counsel. Thank you, Your Honor. May it please the Court. I want to clarify one thing. TCEQ did consider Rio Grande's amended permit limits when it issued the permit to Port Arthur LNG. Pecan suggests that TCEQ summarily dismissed these limits and did not consider them in its analysis. The order itself states that TCEQ considered these limits, specifically states what the lower limits were, and it states that the Commission considered them when making its ultimate determination. What the Commission didn't do is blindly accept those limits for this facility just because they had been included in another recent permit. So as Pecan pointed out, the sole issue here is whether TCEQ, in issuing a permit to Port Arthur LNG, permitted the emission limits at what is considered the best available control technology. So what does it mean to use the best available control technology? Well, as Pecan pointed out, there are two definitions of BACT at play here. But those definitions are not in conflict, and they're not competing with one another, and TCEQ does not apply one definition to the exclusion of another. These definitions are used routinely throughout TCEQ's major and minor source permitting for air permits, but I want to clarify why that is. TCEQ applies BACT to all air permits in Texas, not just major sources. This differs from the Clean Air Act, which doesn't require that minor sources apply BACT. So TCEQ has this other definition that it applies to minor sources, but that definition has been specifically approved by the EPA in Texas's state implementation plan for use in all air permitting, both major and minor sources. So there's no dispute here that the major source definition applies. This is the definition that TCEQ incorporated from the Code of Federal Regulations into TCEQ rules. Nobody disputes that that applies here. The disagreement seems to stem from the fact that TCEQ uses its minor source definition to illuminate what it means to be achievable under that major source definition. So under the major source definition, it defines BACT as an emissions limitation based on the maximum degree of reduction for each pollutant that the commission determines on a case-by-case basis is achievable. So we have two concepts there. One is that BACT is determined on a case-by-case basis. Two is that it must be achievable. So what does it mean to be achievable? That's not defined in the major source definition. So TCEQ looks to its minor source definition and its rules and guidance to help understand what that means in practical application. Is there something there that says that it has to be operational? The minor source definition that TCEQ uses to inform or illuminate its understanding of achievable defines BACT as proven to be operational, obtainable, and capable of reducing or eliminating emissions from the facility. So using both of those definitions to guide its understanding of the concept of BACT, TCEQ considers BACT to be something that has been proven in operation, something that we know can be met, and that it can be achieved consistently throughout the life of a project. And the only way to do that is that it has to have been operating? I wouldn't say that it's the only way to do that. I think there is a strong preference for operational facilities, especially with these lower limits where we don't know how it's going to play out over the life of the facility. But when TCEQ determined in this case that it didn't have to match the limits that were set for Rio Grande, that determination was made on the fact that Rio Grande wasn't operating or hadn't been operated. Is that right? Yes, Your Honor, that's one of the factors that TCEQ considered. It considered the record as a whole, the evidentiary record. It looked at operational facilities. It also looked at the Rio Grande limits and determined that because Rio Grande wasn't operational yet, we have no data about how those limits play out in practice. But you are telling me that you can determine whether or not something is operational without it ever operating. You can do that? Or you're saying it's got to be operating for you to make that determination? It has to be operational to determine, or TCEQ prefers that it be operational for it to determine whether that limit is achievable in practice consistently over the life of the facility. Because what we're talking about is emissions limits that the facility is going to have to comply with. And so when we have these operational facilities, we're able to see the data, see what levels they're meeting. A lot of times they are lower than the permitted emissions limits sometimes. So what TCEQ is looking at is... You use the word prefers. Has that been the case with all facilities or entities that have not been operational, that you apply the definition of the minor source rule instead of the major source in order to determine whether or not it's achievable? I want to be clear. For major sources, TCEQ applies the major source definition, and then it also uses the minor source definition to guide... But I guess... Well, let me rephrase my question. The minor source rule, you apply here to the Rio Grande. Do you do that routinely for those that are not in operation? Yes, TCEQ applies that minor source definition routinely for all of its air permitting. If I'm understanding your question correctly, you're asking about how TCEQ determines the limits for Rio Grande, that those are operational or achievable? When you keep using the term operational, do you mean that it's the equivalent of actually operating or its ability to operate? As used... So as used in the minor source definition, I believe it's the ability to operate. When we're saying what the TCEQ determined about Rio Grande not being operational, that is that it's not operating. But as used in the minor source definition, it would be that it is capable of operating. But to go back to your question, Judge Douglas, for the Rio Grande limits that are lower, applicants are always free to suggest and seek limits that are beyond what has been accepted as backed. The rule requires that TCEQ permit at levels that are at least equivalent to backed. So if a facility like Rio Grande comes in with something that is lower than backed, it's moving the backed forward, TCEQ can accept and permit that, but that doesn't necessarily reset the standard of backed for Port Arthur just because Rio Grande sought a limit that's, you know, going to be lower than what we've previously seen in operation. And that's what happened here, is that these limits are beyond what TCEQ had seen as backed in its recent permit reviews, and so it chose not to impose those as setting a new back standard for Port Arthur on a case-by-case basis because we haven't seen operational data proving that that is going to be consistently achieved in practice. But as I mentioned earlier, TCEQ did consider Rio Grande's limit. It just didn't accept them as setting the new backed standard for Port Arthur's application. The Commission's final order specifically considers and rejects those limits at Rio Grande LNG. TCEQ did this in compliance with its rules that requires it to consider other LNG or other facilities limits both in Texas and outside of Texas as well as the EPA clearinghouse. It considered all of that information as well as an extensive evidentiary record developed during the contested case hearing and made a determination on a case-by-case basis,  to determine that ultimately the limits that it set for Port Arthur LNG's facility represent backed. TCEQ reasonably declined to impose Rio Grande's unproven and untested emissions limits as backed because that Rio Grande facility has not yet been constructed and indeed may never be constructed. It's not yet been constructed or been operating,  or operate at those limits. There are a number of factors that come into play when building these facilities. And so until we see those limits tested and operated, TCEQ reasonably determined that that did not move the backed standard forward for the industry as a new baseline that it must blindly impose on other facilities. By considering the operational status of comparable facilities, TCEQ employed a reasonable and practical approach to selecting limits that were achievable within the meaning of the definition of backed. This approach was consistent with the federal and the Texas Clean Air Acts, as well as TCEQ rules and guidance, and TCEQ respectfully requests that this court deny Pecan's petition for review. I guess I'm not gonna get a satisfactory answer because it just sounds again like for you now, for TCEQ now, operational means it has to operate. Right? You don't agree with that? Operational in the sense of are we looking... We're talking about Rio Grande. In talking about Rio Grande, yes. Those limits were rejected, apparently because it wasn't operating. Right? I mean, that's the reason that TCEQ gave. That is correct. But I would note for the court, notice I'm out of time, I would note for the court that that is one factor that the TCEQ considered. It can and does consider facilities that aren't operational, but in this case, given the timeline of the permitting and how these limits were so recently amended, the facility hasn't been even built yet, may never be built. In this case, TCEQ determined that that didn't establish a new VAC standard. Thank you, Your Honor. Thank you. May it please the court, I'll try to get directly to some of the court's questions, but I think it's, first of all, important to point out the standard of review we're operating under here is whether there was substantial evidence in the record to support the VAC limits that were ultimately permitted for Port Arthur LNG. It's a highly deferential standard, and the arbitrary and capricious challenges, of course, also are very deferential to the agency. So my friend on the other side with Pecan is trying to create three legal errors here, and none of them are borne out by the evidence or the law. First of all, I think my friend with the State correctly said TCEQ did consider the Rio Grande LNG permitting, and that's at 63, 62 to 63 in the record, 63, 72 to 73 in the record. There's four pages where it considers it. Second of all, there's a lot of emphasis on what my friends with Pecan are calling the minor source definition. It is crystal clear in Texas law that Texas applies the federal VAC definition that is incorporated from federal statute and the Code of Federal Regulations, and that refers to whether emissions limits or technologies are achievable. That is included in 116.160. It says Texas adopts the federal VAC limit. Now, Texas fleshes out what that word achievable means in Section 116.10. This is 30 Texas Administrative Code. That's what my friends are calling the minor source rule, but actually that's just a definition of VAC that applies to all sources and all pollutants, and that's where we get the phrase proven to be operational. So there's no legal error there. That's included in Texas law, and that definition, the federal VAC as supplemented by the Texas definition of VAC, that's been approved by EPA as part of the Texas SIP. So there's no legal error there. Now let me get to the questions about what it means to be proven to be operational, and I think the most direct application of that is is it operating in practice on the ground? Is this facility constructed? Now, that's not the only way we know whether something is backed. That's certainly a great way to know, and the reason is because backed has to be set for the life of the facility under the reasonably foreseeable worst-case scenario, and it has to have a compliance margin. So until we see something actually operating, it's very hard to just transplant a limit for one facility onto another facility because then you have our facility operating. We don't know how different that facility is going to be at Rio Grande, and you have us operating on a permit limit that we don't know whether we can meet or not. So let me talk a bit about what we know about what is operational because we actually have operational facilities in this record with this similar technology, and the commission considered that in its order. So Rio Grande is telling you, well, we have a permit for something that they say is similar that may operate this way in the future, but this record contained a facility operated by Cameron LNG with these same type of turbines and the same control technology. That was actually initially permitted at 15 for NOx, but that's our facility. That's Sempra's facility, our parent company, and when we operated it, we realized, oh, we can actually operate that lower at 9. So when we went to seek a permit for our facility with the same technology, we looked at that operational data, and we informed the commission that we think we can meet 9 for NOx with this technology. So we know that's what that technology actually operates. Now, Rio Grande tells you, or Pecan is telling you there's a Rio Grande permit that has been taken at 5 on NOx. That seems to be true, but here's why the commission did not need to accept that evidence as backed, as overriding all the other evidence in the record that is operational, and the reason is because there's very little about the Rio Grande permit in the record, so we don't know whether that facility is as similar as my friends would like the court to believe. The Rio Grande permit is not in the record before the agency, and you can look at page 14 and note 6 in our brief or the state's brief at page 35. They talk about how the Rio Grande permit is not in the record. There's only 2 pages of that permit in the record. Why is it not in the record? Pecan objected to it being placed in the record. So at that stage in the proceedings, we have to remember the executive director had already approved our permit. When we applied for the permit, there was no Rio Grande with a lower permit level. We apply. The executive director preliminarily approves the permit at these ultimate levels. On the day of trial, they bring up Rio Grande. With this permit level, it's not yet operational. But then they resist putting that full permit in the record. Why? You can speculate, but the fact is  that Rio Grande is using the same type of technology. The record does not establish, I think more importantly, the exact way in which that facility will operate. What do I mean by that? What we know from the record is that our turbines are actually designed to produce more LNG throughput per turbine. So they're running harder, in a sense. So there's reason to doubt whether we could meet the turbines, meet the standards set by their turbines. The other thing that is not in the record for Rio Grande is a guarantee from their vendor. They talk about data. That's a very careful phrasing they use. They have a data sheet in the record that they claim says they can operate at 5. But they don't have the vendor guarantee where their manufacturer is telling them, here's what we guarantee you can operate at and we'll be on the hook if you exceed it. About that 5 in the data sheet, we don't know the testing conditions. We certainly don't know whether they were tested to approximate the life of the facility and the reasonably foreseeable worst-case scenario, which is the back standard. So that's all of the reasons why the Commission prefers, I think is a fair word, to look at operational data like Cameron rather than just transposing something from another unit onto a completely different facility. Now, I would hasten to add, does the Commission... But you're not denying that TCQ permitted the Rio Grande. It did. It permitted the Rio Grande, but we don't know what... At the NOx 5 level. Yes. And there's some rules, some regulations, something that says when you're permitting a subsequent facility, you need to match these numbers. So let me... In some sense, that's true, but let me clarify a little further on that question. I think, first of all, the key question would be, is that a similar facility? And that's what I've been talking about, is we don't have the record to establish a similar facility with Rio Grande. And that was Pecan's burden, because once the TCQ Executive Director approves our permit, there is a statutory presumption that arises under Texas law that that is the achievable limits of BACT. And therefore, Pecan, if it wanted to go to a lower number, it had the burden to produce that Rio Grande permit, that Rio Grande vendor guarantee, and put on the case that that was a similar facility. And they didn't do that for whatever reason. We don't have a guarantee from our vendor that we can operate at Nox 5. We have testimony in the record that our vendor guaranteed we can operate at 9. So they are asking to subject us to tens of thousands of dollars per day civil penalties if we can't operate at a facility level of some other facility that they haven't proven up in this record. Now, Judge Graves, one second point on your question about isn't there something that says you have to look at a permitted level. If you look carefully at the TCQ guidance that is cited at page 9 and 10 and 14 and 15 of Pecan's reply brief, it's referring to the initial permit application. So when Port Arthur LNG puts together its permit application, absolutely we're required to look at all the permits that are out there that are similar to ours. That's why we looked at Cameron, because that's what we knew and that's what was out there. We looked at other units all over the country that were similar to ours. But the Rio Grande was not permitted at the lower limit until two years after our application. It was not permitted at the lower limit until after the TCQ executive director had already approved our application. So when you get to that stage in the process and then you look at the guidelines on how's the agency supposed to handle that, number one, that statutory presumption in our favor arises and they have the burden to put on evidence to rebut it. But number two, it says that the agency may consider these new permits. It may do a new technical analysis. It's not required to do so. And certainly the upshot of their position is that we go through years of this process. We gather investors. We are beginning to develop the plans for the facility. We've got the preliminary permit. Is it typical that this process takes years? Oh, yes, Your Honor. I mean, a decade would be more accurate. This won't be operational even on this timeline until 27 or 28. So if I could just wrap up on one practical point, I think, which is their view is that if a new permit pops up for some facility that looks spatially similar to the facility that's at issue, that the commission is required to immediately restart the process and do a new technical analysis of that facility, send us back to the drawing board. That is not the way the statute is supposed to operate. It's supposed to expedite the approval of natural gas infrastructure, and you just have the recycling and the restarting of the process over and over again. Thank you. Thank you, Counsel. Rebub. Thank you, Your Honors. May it please the Court. I'd first like to address something that both the TCQ and Port Arthur Counsel raised, kind of hedging their use of the minor source definition, which TCQ today referred to as its minor source definition. I think it's very important that we look at the order that TCQ issued, the basis for their decision. This is Record 37-508. This is TCQ's order that we're appealing today. Their explanation of changes, they add the language from the Texas minor source definition to their definition of BACT in finding of Fact 52. This is Explanation of Change 1. Explanation of Change 2 is what they're calling the consideration of Rio Grande LNG is not any kind of consideration that the Clean Air Act contemplates. As I've said, a consideration in a BACT analysis is a detailed technical and economic analysis of the control technology of a pollution limit. That's not evident in this record at all. There's no evidence that such consideration took place. And in fact, you know, in TCQ's order, on number 2 in their explanation of changes, they say that although Golden Pass LNG and Rio Grande LNG have lower permitted emission limits compared to Port Arthur LNG, those facilities are not in operation and there's no operational data to prove that their permitted limits are achievable at this time. That's the extent of TCQ's consideration of Rio Grande LNG's limits and it's legally deficient and it's based on application of the minor source definition, which does not apply. The Federal Clean Air Act is clear that a minor source definition or a major BACT definition can't constrain the major source definition that all the parties admit applies here. TCQ says it can consider facilities that aren't operational, but it didn't in this case because it arose too late in the permitting process, but the parties have admitted that the BACT process doesn't close until the permit is issued and this permit wasn't issued until the fall of 2022, almost 2 years after Rio Grande's permit. Again, Port Arthur LNG says it's crystal clear the Federal definition applies, which illustrates what an error of law it is to apply the minor source definition to constrain this process. These definitions are not consistent. The fact that TCQ had to add the minor source language into its findings of fact in the order is evidence of this. Port Arthur LNG raises the issue that the permit's not in the record, but there are permit documents in the record. There's the Rio Grande LNG's Permit Source Analysis and Technical Review, which is a TCQ document that's at Record 12-880. We also have Rio Grande LNG's FERC application at Record 11-801, their application for a FERC permit. The reason the permit documents from the 2020 permit are not in the record is that they were not produced to PACAN as they should have been as part of a discovery request. TCQ counsel apologized on the record for this oversight. The first time we saw these permit documents was when the applicant, Port Arthur LNG, produced them to us on the second morning of the hearing in their attempt to introduce the parts of the permit that they wanted to rely on for their analysis, and they did not introduce the permit itself, but they did testify extensively about it. So we have those documents in the record. We also have... But you objected to it being admitted. We objected to it being admitted initially because we had not seen it. That night we took a look at it, and the next morning we introduced some testimony regarding it to which Port Arthur LNG's counsel objected. But their expert on cross-examination did read the contents of what Rio Grande LNG in their application labeled their vendor guarantee, which was this data sheet, but it was also behind the heading vendor guarantee that showed that these turbines were capable of meeting... that the GE Frame 70A turbine that was from Baker Hughes, the same vendor Port Arthur LNG is using, was able to meet a NOx limit of 5 ppm. TCQ and Port Arthur LNG say that they prefer to look at facilities that are operating, that they can look at facilities that are operating. Again, this is... And this is their testimony today, but this is contrary to what the commission says in its order, that it doesn't have to and cannot look at facilities that are not operational, that BACT isn't set until a facility is operational. Kea and I addressed the fact that it was permitted too late. You know, so in conclusion, we're asking the commission to recognize this is a clear error of law, applying the wrong definition, arbitrarily applying their own policy. Today, talking about preferences, the failure to consider Rio Grande LNG was an error of law, and we're asking this commission to remand this permit  Thank you. Thank you, Your Honor. The court will take this matter under advisement.